# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| RICHARD BRAUN, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 23-cv-234 |
| JULIE A. SU, in her official capacity as Acting Secretary of Labor,[*] | |
| *Defendant*. | |

## BRIEF FOR *AMICUS CURIAE* J. MARK IWRY IN SUPPORT OF DEFENDANT

Andrew Soukup (E.D. Wis. No. 6297674)
Robert A. Long, Jr.*
Richard C. Shea*
Thomas Brugato*
Jason M. Levy*
Jack Lund*
Emily A. Vernon*
Adam Spiegel*
COVINGTON & BURLING LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
Tel: (202) 662-6000
Fax: (202) 662-6302

*Members of the D.C. Bar, not admitted
in the Eastern District of Wisconsin*

---

[*] *Amicus* has substituted the name of the Acting Secretary of Labor as Defendant in accordance with Fed. R. Civ. P. 25(d).

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ............................................................................ 1

SUMMARY OF THE ARGUMENT ........................................................................ 3

ARGUMENT .......................................................................................................... 7

I.    The Current Rule's Treatment of ESG Falls Squarely Within the Statutory
      Mandate, Because It Requires Fiduciaries to Focus Exclusively on Risk-Adjusted
      Financial Returns. ........................................................................................ 7

      A.    The Text of ERISA Requires Fiduciaries to Maximize Financial Benefits............ 7

      B.    The Current Rule Adheres to the Statutory Mandate by Recognizing that
            the Consideration of ESG Factors Is Permitted Only to the Extent They
            Are Relevant to Maximizing Financial Benefits. ................................... 9

II.   The Key Substantive Requirements of the Current Rule and Prior Rule Are
      Consistent with One Another and with the Statutory Mandate. ...................... 11

      A.    Both Rules Provide that ESG Factors May Be Considered Only to the
            Extent Relevant to Risk-Adjusted Returns. ......................................... 11

      B.    Both Rules Foreclose Collateral-Purpose Investing and Have
            Substantively Equivalent "Tiebreaker" Provisions............................... 13

III.  If the Court Were to Find the "Tiebreaker" Provision of the Current Rule Invalid,
      the Court Should Preliminarily Enjoin Only That Provision and Sever It From the
      Remainder of the Rule. ................................................................................. 16

CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biden v. Missouri*,
    142 S. Ct. 647 (2022) ............................................................................................17

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ........................................................................................4, 8, 9

*Gonzales-Veliz v. Barr*,
    938 F.3d 219 (5th Cir. 2019) ...................................................................................6

*Hughes v. Northwestern Univ.*,
    142 S. Ct. 737 (2022) ............................................................................................10

*Keach v. U.S. Trust Co.*,
    419 F.3d 626 (7th Cir. 2005) ...................................................................................4

*North Carolina v. FERC*,
    730 F.2d 790 (D.C. Cir. 1984) ...............................................................................16

*Rothstein v. Am. Int'l Grp. Inc.*,
    837 F.3d 195 (2d Cir. 2016) ....................................................................................8

**Statutes**

26 U.S.C. § 408(m) .......................................................................................................10

26 U.S.C. § 4975 ...........................................................................................................16

29 U.S.C. § 1002(2)(A) ...................................................................................................9

29 U.S.C. § 1104 .............................................................................................................8

29 U.S.C. § 1104(a) ......................................................................................................15

29 U.S.C. § 1104(a)(1) ....................................................................................................8

29 U.S.C. § 1104(a)(1)(A) ...............................................................................................8

29 U.S.C. § 1104(a)(1)(B) ...............................................................................................8

29 U.S.C. § 1104(b) ......................................................................................................10

29 U.S.C. § 1132(i) .......................................................................................................16

Case 2:23-cv-00234-PP    Filed 04/05/23    Page 3 of 23    Document 18-1

29 U.S.C. § 1132(l) ...........................................................................................................16

50 U.S.C. § 4303(a) ..........................................................................................................10

Employee Retirement Income Security Act of 1974 ............................................... *passim*

Pension Protection Act of 2006 .........................................................................................1

**Other Authorities**

26 C.F.R. §§ 141.4975-13 .................................................................................................16

29 C.F.R. § 2550.404a–1(f) ..............................................................................................17

29 C.F.R. § 2550.404a-1(b)(1)(i) .......................................................................................9

29 C.F.R. § 2550.404a-1(b)(4) ...............................................................................9, 10, 11

29 C.F.R. § 2550.404a-1(c)(1) ..........................................................................................14

29 C.F.R. § 2550.404a-1(c)(2) ..........................................................................................14

73 Fed. Reg. 61734, 61735–36 ...........................................................................................6

*Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 72,846
  (Nov. 13, 2020) .........................................................................3, 5, 12, 13, 14, 16

*Mark Iwry MPP/JD 1976*, Harvard Kennedy School,
  https://www.hks.harvard.edu/alumni/connect/community-stories/mark-iwry-
  mpp/jd-1976-dedicated-helping-americans-achieve-financial-security ....................................1

*Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder
  Rights*, 87 Fed. Reg. 73,822 (Dec. 1, 2022) ............................................3, 5, 15, 17

*Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder
  Rights*, 86 Fed. Reg. 57,272, 57,276 (Oct. 14, 2021) ...............................................5

Schanzenbach & Sitkoff, *Reconciling Fiduciary Duty and Social Conscience: The
  Law and Economics of ESG Investing By a Trustee*, 72 Stanford L. Rev. 381,
  397 (2020) ...................................................................................................................4

Schanzenbach & Sitkoff, *ESG Investing After the DOL Rule on "Prudence and
  Loyalty in Selecting Plan Investments and Exercising Shareholder Rights,"*
  Harvard Law School Forum on Corporate Governance (Feb. 2, 2023) ......................13, 14, 15

Case 2:23-cv-00234-PP   Filed 04/05/23   Page 4 of 23   Document 18-1

## INTEREST OF AMICUS CURIAE

Amicus is one of the nation's foremost authorities on law and policy relating to retirement plans and the U.S. private pension system. He has been referred to as "one of the most constructive public servants in the United States" and "the most important force behind massive improvements in U.S. retirement policy,[1] including the rise of automatic enrollment in pension plans."[2] He has been recognized as "an indispensable figure in the retirement policy arena not only for his substantive expertise but also his ability to get things done."[3]

His work as a senior regulator and policy maker in the public sector spans four presidential administrations, including service as senior advisor to the Secretary of the Treasury for national retirement and health policy, deputy assistant secretary of the Treasury, and as a policy and legislative advisor to numerous Members of Congress, congressional staff, and various Presidential candidates. Mr. Iwry has been instrumental in developing and advising on numerous significant legislative initiatives, including the Pension Protection Act of 2006 and the recently enacted SECURE and SECURE 2.0 retirement legislation, and has testified before Congress on

---

[1] He is the author or co-author, or one of the leading architects or drivers, of numerous retirement policy initiatives and reforms—many of them expanded by or otherwise featured in the recently enacted SECURE and SECURE 2.0 retirement legislation—including 401(k) automatic enrollment, the expanding state-based Automatic IRA programs, the nationwide Automatic IRA proposal, the SIMPLE-IRA plan (covering 3 to 4 million savers), the Saver's Credit (used by some 10 million taxpayers), the QLAC, the "myRA", automatic rollovers to IRAs of small plan balances, the new plan startup tax credit for small businesses, Universal Savings Accounts, direct deposit of tax refunds into IRAs and US savings bonds, and the major curtailment of the longstanding IRS "use it or lose it" rule.

[2] *Mark Iwry MPP/JD 1976 is dedicated to helping all Americans achieve financial, retirement, and health care security*, Harvard Kennedy School, https://www.hks.harvard.edu/alumni/ connect/community-stories/mark-iwry-mpp/jd-1976-dedicated-helping-americans-achieve-financial-security. "Auto-enrollment (including auto-contribution-increases) and the resulting automatic plan investment in target-date and other diversified funds is widely considered the most transformative 401(k) reform of the last 40 years." *Id*.

[3] *Id*.

27 occasions, both as a government official and as a private-sector expert. In the private sector he is or has been a nonresident senior fellow at the Brookings Institution, a partner in the law firm of Covington & Burling, a visiting scholar at the Wharton School (University of Pennsylvania), outside counsel to AARP, a research professor at Georgetown University, a co-founder and principal of the nonpartisan Retirement Security Project, and an advisor to numerous retirement plan sponsors, investment firms, fintechs, other financial institutions, plan service providers, trade associations, research entities, and others.

Mr. Iwry has received numerous awards for leadership, achievement, and innovation from a wide variety of organizations and institutions, including the small business community, institutional investment advisors, the financial services industry, the payroll industry, pension professionals, the IRS, Harvard University, Georgetown University, workers' rights groups, and others, and has co-authored three edited volumes and numerous articles and papers on private pensions and retirement saving. He has been recognized in the press and various publications as one of the nation's most influential individuals in pensions, saving, and finance, including as one of the world's 30 "top financial players" and as one of 20 individuals expected to have a major influence on the financial services industry.

Having devoted much of his career, both in public service and the private sector, to enhancing and expanding the nation's private pension system and promoting retirement security for tens of millions of American workers, Mr. Iwry has a deep and longstanding interest, involvement, and background in the issues before the Court in this proceeding. He also has a history of working across ideological and political divides and bringing disparate interests together in pursuit of common ground and constructive, practical solutions to best serve the interests of American workers and taxpayers. Accordingly, he respectfully submits this brief in the hope that

it may be of assistance to the Court as it addresses the important and challenging issues before it.[4]

## SUMMARY OF THE ARGUMENT

The Employee Retirement Income Security Act of 1974 ("ERISA") requires the responsible fiduciary of an ERISA plan to act with prudence and loyalty in managing the plan's assets. Those duties require fiduciaries to maximize the financial benefits for plan participants and their beneficiaries. For at least 30 years, the Department of Labor has issued regulatory and sub-regulatory guidance related to when fiduciaries may take into account what have now come to be known as environmental, social, and governance ("ESG") factors in investment decisions.[5] Most recently, in 2020, the Department promulgated a rule on the subject (the "Prior Rule"),[6] which was replaced by a new rule in 2022 (the "Current Rule").[7]

There is a need for clear guidance in this area, but public debate about these two rules has generated more heat than light, by casting them as diametrically opposed. Upon close inspection, the substantive investment standards articulated in the Prior and Current Rules (and, indeed, in prior Department guidance) are essentially the same: Fiduciaries must make investment decisions for the exclusive purpose of maximizing risk-adjusted financial returns[8] and may consider ESG

---

[4] All parties in this case have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part. Mr. Iwry submits this brief solely in his individual capacity, not as a representative of, and not representing the views or positions of, any organization or other person.

[5] This brief uses the terms "investment decisions" and "investment management decisions" to describe decisions to buy, hold, and sell investments, as well as decisions to manage shareholder and other ownership rights appurtenant to such investments, including the right to vote proxies.

[6] *Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 72,846 (Nov. 13, 2020).

[7] *Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights*, 87 Fed. Reg. 73,822 (Dec. 1, 2022).

[8] When this brief refers to risk-adjusted returns, it refers to expected, not actual, returns. *See Keach v. U.S. Trust Co.*, 419 F.3d 626, 637 (7th Cir. 2005) (holding that ERISA's fiduciary duties "require prudence, not prescience").

factors only to the extent they are relevant to that financial determination.[9] As a result, Plaintiffs are not entitled to a preliminary injunction, because no person is harmed by the replacement of the Prior Rule with the Current Rule.

It is not surprising that there is little substantive difference between the core legal standards articulated in the Current and Prior Rules: Both rules (like the Department's earlier guidance) are tightly constrained by the plain language of ERISA, as interpreted by the Supreme Court. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). This binding authority is crystal clear that fiduciary investment management decisions must be made for the exclusive purpose of maximizing risk-adjusted financial returns to provide the benefits due to participants and beneficiaries under the plan and defraying the reasonable costs of administering the plan. Like the sub-regulatory guidance that preceded them, both the Current Rule and the Prior Rule incorporate this requirement by making clear that a fiduciary is not permitted to make an investment management decision for any other reason.[10]

This consistency between the Current and Prior Rules has not been widely understood because enormous confusion has surrounded the term "ESG investing." This may stem from the fact that the term has been used to describe both a type of collateral-purpose investing (investing to achieve nonfinancial goals) and a type of risk-return investing (investing to maximize risk-adjusted financial returns). *See* Schanzenbach & Sitkoff, *Reconciling Fiduciary Duty and Social Conscience: The Law and Economics of ESG Investing By a Trustee*, 72 Stanford L. Rev. 381, 397

---

[9] Both the Prior Rule and the Current Rule provide a narrow exception to permit consideration of non-financial collateral benefits, including non-financial ESG benefits, to break a tie between two potential investment choices. Subsequent references in this brief to the fiduciary duty to pursue risk-adjusted financial returns to the exclusion of all other considerations are subject to this narrow exception. The exception is discussed below.

[10] *See* Section II, *infra*.

(2020).[11]  In this brief, we use this taxonomy to distinguish between "collateral-purpose" investing and "risk-return" investing.  This taxonomy is particularly useful here where Plaintiffs' continue to conflate any consideration of ESG factors with collateral-purpose investing.  *See* Pls. Br. at 11 (assuming that ESG investing is exclusively collateral-purpose investing).  Applying the governing statutory authority, both rules make clear the primacy of risk-return investing: An ERISA fiduciary's investment decisions may never sacrifice risk-adjusted financial returns in order to achieve nonfinancial goals (*i.e.*, collateral-purpose investing).

With respect to ESG factors, the Current Rule accurately states that, in appropriate circumstances, such factors may be relevant to a risk-return investment analysis.  Because the ultimate touchstone of that analysis is a financial goal—*i.e.*, achieving the optimal risk and return profile—this approach is fully consistent with the statute, binding case law, and, indeed, the Prior Rule.  While the Prior Rule was silent on what particular factors might be relevant to a risk-return analysis, the preamble to the Prior Rule makes clear that failing to consider risk-return factors, including ones that fall under the umbrella of ESG, could in some circumstances amount to a violation of the duty of prudence under ERISA.  85 Fed. Reg. at 72,848 (acknowledging that ESG factors may be relevant economic factors, for example, in the case of "a company's improper

---

[11] The proposed rules that preceded each of the Prior and Current Rules also may have contributed to the perception that the two final rules are fundamentally inconsistent with one another. Specifically, the proposed rules staked out diametrically opposed views of the propriety of considering ESG factors in risk-return investing.  *Compare Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 39,113, 39,116 (June 30, 2020) ("ESG investing raises heightened concerns under ERISA.") *with Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights*, 86 Fed. Reg. 57,272, 57,276 (Oct. 14, 2021) (stating that "climate change and other ESG factors are often material").  The proposed rule to the Prior Rule seemed to ossify a widespread impression that the Prior Rule itself prohibited consideration of ESG factors, which it did not do.  *See* 87 Fed. Reg. at 73,826 (citing public comments that the Prior Rule creates uncertainty and discourages considering even relevant ESG factors).  Similarly, the proposed rule to the Current Rule appeared to create a widespread impression that the Current Rule itself allows collateral-purpose ESG investing broadly, which it also did not do.

disposal of hazardous waste"). This subtlety was not widely perceived. As a result, it was reasonable for the Department to make this point explicitly in the regulatory text to remove any doubt that, in appropriate circumstances, ESG factors may be considered in a risk-return analysis. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 235 (5th Cir. 2019) (holding that "removing a source of confusion" is a "good reason" for an agency to clarify regulatory requirements).

Rather than grapple with the actual text of the rule, Plaintiffs attack a strawman, arguing that the Current Rule makes a blanket "declaration that ESG considerations are proper risk-return factors." Pls. Br. at 15. That is simply incorrect: The Current Rule makes clear that ESG considerations may be factors to consider, only if they are relevant to a risk-return analysis; it does not provide that ESG factors must always be considered, or that they are always relevant to a risk-return analysis.

Plaintiffs also focus on the revisions to the "tiebreaker" portion of the rule. Properly understood, however, the tiebreaker provision in the Current Rule does not differ materially from that in the Prior Rule, and in any event, is seldom used in practice. Plaintiffs effectively concede this similarity, noting that the Prior Rule's tiebreaker provision "explicitly permitted" collateral-purpose ESG investing where its requirements were satisfied. Pls. Br. at 11.

Both the Current and Prior Rules allow fiduciaries to break a "tie" between two potential investment choices by taking into account collateral purposes (which could, but need not, be ESG purposes[12]), provided that risk-adjusted investment returns are not sacrificed. The Current Rule uses slightly different language to articulate when a "tie" can be declared and removes a special

---

[12] For example, the tiebreaker rule could be applied by a faith-based organization to invest in a way that is consistent with the values of the organization's employee population. *Cf.* 73 Fed. Reg. 61734, 61735–36 (acknowledging that non-economic factors could include "myriad public policy preferences").

requirement in the Prior Rule to document the tie. But while the Current Rule's textual formulation differs slightly from the Prior Rule's, the basic substantive requirement does not. In any event, the tiebreaker principle applies only in rare circumstances because of the difficulty of determining that two different investments would "equally serve" the financial interests of the plan, and because considering certain collateral factors might be deemed to trigger a nonexempt prohibited transaction under ERISA and the Internal Revenue Code. And in the limited circumstances in which the tiebreaker provision might be invoked, the fiduciary inevitably will document the tie to demonstrate satisfaction of its statutory fiduciary duties, even in the absence of tiebreaker-specific documentation requirements—belying Plaintiffs' argument that there is a need for a special documentation requirement for fiduciaries to "show their work." Pls. Br. at 11.

Finally, to the extent there are concerns that the tiebreaker provision allows consideration of collateral purposes in some circumstances (albeit, without sacrificing participants' and beneficiaries' financial benefits), the same concerns would apply to the Prior Rule and every piece of significant guidance on this issue for the last several decades. In other words, replacing the Current Rule with the Prior Rule—as Plaintiffs have requested—would do nothing to remedy this concern. In any event, the tiebreaker provision is severable from the remainder of the Current Rule.

Accordingly, there is no basis to invalidate the Current Rule, and Plaintiffs' request for relief should be denied.

## ARGUMENT

I. **The Current Rule's Treatment of ESG Falls Squarely Within the Statutory Mandate, Because It Requires Fiduciaries to Focus Exclusively on Risk-Adjusted Financial Returns.**

A. **The Text of ERISA Requires Fiduciaries to Maximize Financial Benefits.**

To properly analyze the Current Rule, it is essential to understand the statutory framework

governing fiduciary duties under ERISA, as authoritatively interpreted by the Supreme Court. "ERISA subjects its fiduciaries to what have been called the 'highest duties known to law.'" *Rothstein v. Am. Int'l Grp. Inc.*, 837 F.3d 195, 208 (2d Cir. 2016) (quoting Jayne Zanglein, et al., ERISA Litigation 1261 (5th ed. 2014) (emphasis added)). These fiduciary duties—the duty of prudence and the duty of loyalty—are found in 29 U.S.C. § 1104.

The duty of prudence requires that a fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The duty of loyalty requires that a fiduciary act "solely in the interest of the participants." 29 U.S.C. § 1104(a)(1). Both of these duties must be exercised "for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

Any question that the "exclusive purpose" requirement could refer to something other than the purpose of maximizing financial returns to provide benefits to participants and their beneficiaries (and to defray plan expenses) was resolved in the unanimous opinion of the Supreme Court in *Dudenhoeffer*. As the Court explained, "[t]he 'exclusive purpose' to be pursued by all ERISA fiduciaries is 'providing benefits to participants and their beneficiaries' while 'defraying reasonable expenses of administering the plan.'" 573 U.S. at 420 (quoting 29 U.S.C. §§ 1104(a)(1)(A)(i), (ii)). "[T]he term 'benefits' in the provision just quoted must be understood to refer to the sort of *financial* benefits (such as retirement income) that trustees who manage investments typically seek to secure for the trust's beneficiaries." *Id.* at 421 (citing 29 U.S.C. § 1002(2)(A)). *Dudenhoeffer* makes clear that no collateral purpose can override these statutory fiduciary duties, which include the requirement that a fiduciary act for the "exclusive purpose" of

investing plan assets to provide "financial benefits."

**B.**     **The Current Rule Adheres to the Statutory Mandate by Recognizing that the Consideration of ESG Factors Is Permitted Only to the Extent They Are Relevant to Maximizing Financial Benefits.**

The Current Rule adheres to this statutory mandate. The Rule provides that consideration of the economic effects of ESG factors may be appropriate when—and *only* when—a fiduciary reasonably determines them to be relevant to a risk-return analysis. The Current Rule, conforming to the statute, does *not* allow a fiduciary to consider ESG factors when such factors are not relevant to the risk-return analysis in a particular circumstance. In short, the Current Rule precludes a fiduciary from pursuing collateral purposes, ESG or otherwise.

Specifically, under the Current Rule, a fiduciary must give "appropriate consideration to those facts and circumstances that . . . the fiduciary knows or should know are relevant to the particular investment." 29 C.F.R. § 2550.404a-1(b)(1)(i). The Current Rule defines "appropriate consideration" to include a "determination by the fiduciary that the particular investment . . . is reasonably designed, as part of the portfolio . . . or menu, to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain . . . compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks." *Id.* § 2550.404a-1(b)(2)(i). It stresses that a "fiduciary's determination with respect to an investment . . . must be based on factors that the fiduciary reasonably determines are relevant to a risk and return analysis." *Id.* § 2550.404a-1(b)(4). "Risk and return factors may include the economic effects of climate change and other environmental, social, or governance factors on the particular investment." *Id.* But "[w]hether any particular consideration is a risk-return factor depends on the individual facts and circumstances," and the "weight given to any factor by a fiduciary should appropriately reflect a reasonable assessment of its impact on risk-return." *Id.*

Thus, consistent with the statutory framework, the Current Rule requires fiduciaries to

focus exclusively on maximizing risk-adjusted returns. It does not place a thumb on the scale for any particular investment or investment strategy. Nor does it compel or preclude any particular type of investment.[13] Instead, the rule simply provides that where a fiduciary reasonably determines that an investment strategy will maximize risk-adjusted returns, a fiduciary may pursue the strategy, whether pro-ESG, anti-ESG, or entirely unrelated to ESG.

As applied in the context of participant-directed defined contribution plans, the statute requires that plan fiduciaries prudently select and monitor investment options by winnowing down potential options to those that fill particular niches or play other appropriate roles in the plan's investment menu and that are expected to provide superior risk-adjusted returns in the menu or the relevant portion of the menu. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) ("[E]ven in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options."). The investment menu is driven by the necessity to provide a participant with the ability to construct a personalized investment portfolio that is diversified across appropriate asset classes and is consistent with the varying investment time horizons of younger and older plan participants. The Current Rule allows plan fiduciaries to exercise their fiduciary judgment to construct such an investment line-up. Here, as above, the Current Rule does not require inclusion of any particular investment fund or strategy but rather allows fiduciaries to exercise their judgment in crafting a menu of investment options— constrained by the obligation to select investment options that the fiduciary reasonably determines

---

[13] Other rules provide specific and modest restrictions on the types of assets that can be held in various types of ERISA plans—*e.g.*, collectibles (26 U.S.C. § 408(m)); assets whose incidents of ownership, with limited exceptions, are held outside the jurisdiction of the US courts (29 U.S.C. § 1104(b)); investments that would violate "trading with the enemy" restrictions (50 U.S.C. § 4303(a)); and investments subject to other US government sanctions.

are likely to produce superior risk-adjusted financial returns.

Plaintiffs' argument to the contrary rests on a baseless reading of the Current Rule. Plaintiffs contend that the Current Rule "declare[s] that ESG considerations are proper risk-return factors." Pls. Br. at 15. But that cannot be squared with the text of the Current Rule, which makes clear that ESG factors may *only* be considered depending on "individual facts and circumstances," and the weight given to them must "reflect a reasonable assessment of [their] impact on risk-return." 29 C.F.R. § 2550.404a-1(b)(4). Plaintiffs do not actually grapple with that clear regulatory language. *See* Pls. Br. at 10–11. Contrary to Plaintiffs' suggestions, the Current Rule does not impose a blanket mandate to consider ESG factors, nor does it make some absolute declaration that ESG factors are always relevant.

## II. The Key Substantive Requirements of the Current Rule and Prior Rule Are Consistent with One Another and with the Statutory Mandate.

### A. Both Rules Provide that ESG Factors May Be Considered Only to the Extent Relevant to Risk-Adjusted Returns.

Claims that the Current Rule marked a significant substantive departure from the Prior Rule are mistaken. As described above, the Current Rule allows ESG factors to be considered *solely* when they are relevant to conducting a risk-return analysis, and even when relevant, such factors may only be given weight that "appropriately reflect[s] a reasonable assessment of its impact on risk-return." 29 C.F.R. § 2550.404a-1(b)(4). Thus, the Current Rule makes clear that ESG *can* be considered, but *only to the extent* relevant to a risk-return analysis.

The Prior Rule effectively reaches the same conclusion, but states it in the negative rather than the affirmative: In other words, that ESG factors *must not* be considered *to the extent* they are *not* a "pecuniary factor," *i.e.*, a factor that would have "a material effect on the risk and/or return." Like the Current Rule, the Prior Rule required the fiduciary to give "appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment

duties, the fiduciary knows or should know are relevant to the particular investment." 85 Fed. Reg. at 72,884. The Prior Rule further provided that "[a] fiduciary's evaluation of an investment . . . must be based only on pecuniary factors . . . . The weight given to any pecuniary factor by a fiduciary should appropriately reflect a prudent assessment of its impact on risk-return." *Id.* The Prior Rule defined a "pecuniary factor" as "a factor that a fiduciary prudently determines is expected to have a material effect on the risk and/or return of an investment based on appropriate investment horizons consistent with the plan's investment objectives and the funding policy established pursuant to section 402(b)(1) of ERISA." *Id.* In sum, under the Prior Rule, an ESG factor would be a "pecuniary factor" that could be considered if it "is expected to have a material effect on the risk and/or return of an investment," but would be a non-pecuniary factor that could not be considered if it did not have such a material effect.

Thus, while the framing of the two rules differs, the substantive requirements of the two rules are the same: ESG factors can be considered if, only if, and only to the extent that they are relevant to a risk-return analysis, with the goal of that analysis being maximization of financial benefits to plan participants and their beneficiaries. Indeed, the preamble to the Prior Rule discusses how the 2020 proposed rule "expressly acknowledged that ESG factors and other similar considerations may be pecuniary factors and economic considerations, but only if they present economic risks or opportunities that qualified investment professionals would treat as material economic considerations under generally accepted investment theories." 85 Fed. Reg. at 72,855.[14]

Others have observed that there is no meaningful difference between the Current Rule and Prior Rule in this regard. As two leading academics explain:

> The heart of the [Current Rule] is the requirement that an ERISA fiduciary must

---

[14] This language was removed because of lack of clarity around the meaning of ESG, not because ESG factors cannot be pecuniary factors. *Id.* at 72,857.

make investment decisions 'based on factors that the fiduciary reasonably determines are relevant to a risk and return analysis.' The heart of the [Prior Rule] was the requirement that an ERISA fiduciary must make investment decision 'based only on pecuniary factors.' But a pecuniary factor was defined by the [Prior Rule] to mean one 'that a fiduciary prudently determines is expected to have a material effect on the risk and/or return of an investment.' The changes in the [Current Rule] from the [Prior] Rule are thus cosmetic . . . .

Schanzenbach & Sitkoff, *ESG Investing After the DOL Rule on "Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights*," Harvard Law School Forum on Corporate Governance (Feb. 2, 2023).[15]

### B. Both Rules Foreclose Collateral-Purpose Investing and Have Substantively Equivalent "Tiebreaker" Provisions.

Both rules foreclose collateral-purpose investing, and their tiebreaker provisions are not meaningfully different.

The two rules' description of the application of the duty of loyalty to ESG investing is effectively identical. The Prior Rule provides that "[a] fiduciary may not subordinate the interests of the participants and beneficiaries in their retirement income or financial benefits under the plan to other objectives, and may not sacrifice investment return or take on additional investment risk to promote non-pecuniary benefits or goals." 85 Fed. Reg. at 72,884. The Current Rule provides that "[a] fiduciary may not subordinate the interests of the participants and beneficiaries in their retirement income or financial benefits under the plan to other objectives, and may not sacrifice investment return or take on additional investment risk to promote benefits or goals unrelated to interests of the participants and beneficiaries in their retirement income or financial benefits under the plan." 29 C.F.R. § 2550.404a-1(c)(1).

The two rules likewise do not have meaningfully different "tiebreaker" provisions. Both

---

[15] *Available at* https://corpgov.law.harvard.edu/2023/02/02/esg-investing-after-the-dol-rule-on-prudence-and-loyalty-in-selecting-plan-investments-and-exercising-shareholder-rights/.

rules allow fiduciaries to take into account collateral purposes solely to break a tie between two competing investments. The Current Rule authorizes such consideration: If the "fiduciary prudently concludes that competing investments . . . equally serve the financial interests of the plan over the appropriate time horizon, the fiduciary is not prohibited from selecting the investment . . . based on collateral benefits other than investment returns. A fiduciary may not, however, accept expected reduced returns or greater risks to secure such additional benefits." 29 C.F.R. § 2550.404a-1(c)(2).

Once again, this approach is not meaningfully distinct from the Prior Rule, which provided that "when choosing between or among investment alternatives that the plan fiduciary is unable to distinguish on the basis of pecuniary factors alone, the fiduciary may use non-pecuniary factors as the deciding factor in the investment decision." 85 Fed. Reg. at 72,884.

The difference between these provisions again amounts to little more than a non-substantive matter of framing and wording: The Current Rule provides that collateral benefits can be considered, but only after the fiduciary *affirmatively and prudently concludes* that competing alternatives provide equal financial benefit. The Prior Rule provides that collateral benefits (*i.e.*, anything other than pecuniary factors) can be considered, but only where the fiduciary *is unable to distinguish* between alternatives on the basis of pecuniary factors alone.[16] As one article observed, "[a]ll told, little of substance has changed regarding the application of the tie-breaker." Schanzenbach & Sitkoff, *ESG Investing After the DOL Rule on "Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights,"* Harvard Law School Forum on Corporate Governance (Feb. 2, 2023). Plaintiffs appear to acknowledge that the substantive

---

[16] The Current Rule is clear that if a fiduciary relies on collateral benefits to break the tie, the fiduciary may not "accept expected reduced returns or greater risk to secure [the] additional benefits." *Id.*

tiebreaker standard is not meaningfully different, in observing that collateral-benefit ESG factors may be used as "a bonus or a tiebreaker," and noting that the Prior Rule "explicitly permitted such investments." Pls. Br. at 5, 11.

The Current Rule did remove certain documentation-related requirements in connection with "tiebreaker" scenarios. However, that removal has no practical significance. Well-advised fiduciaries document their decisions, especially decisions of this nature. As the preamble to the Current Rule explains: "Fiduciary documentation of their investment activities already is a common practice." 87 Fed. Reg. at 73,838. Moreover, "the Department expects that the analytics and documentation requirements of the tiebreaker provision are subsumed in the analytics and documentation requirements of the risk and return analysis required by paragraphs (c)(1) and (b)(4) of the final rule." 87 Fed. Reg. at 73,876. Thus, "[t]he well-known and longstanding fiduciary obligation to document important decisions and the reasons for those decisions continues to pertain to an ERISA fiduciary's invocation of the tiebreaker rule." Schanzenbach & Sitkoff, *ESG Investing After the DOL Rule on "Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights," * Harvard Law School Forum on Corporate Governance (Feb. 2, 2023); *see also* 29 U.S.C. § 1104(a).

In any event, the tiebreaker aspect of the rule is of little practical significance. Reliance on the tiebreaker rule can be expected to be rare, because fiduciaries most often can distinguish among investments on the basis of risk-return factors alone. Moreover, fiduciaries may be loath to rely on the tiebreaker rule because of the risk, no matter how remote, that selecting an investment based on certain collateral purposes might be deemed to result in a nonexempt prohibited transaction.[17]

---

[17] A fiduciary that engages in a nonexempt prohibited transaction may be subject to civil penalties

In short, there is little meaningful difference between the two rules with respect to consideration of ESG factors.[18] Any concerns that the tiebreaker provision allows consideration of collateral purposes would apply equally to the Prior Rule and every piece of significant guidance on this issue for the last several decades. As a result, replacing the Current Rule with the Prior Rule—as Plaintiffs have requested—would do nothing to remedy this concern.

## III.  If the Court Were to Find the "Tiebreaker" Provision of the Current Rule Invalid, the Court Should Preliminarily Enjoin Only That Provision and Sever It From the Remainder of the Rule.

Even if the Court were to conclude that the tiebreaker provision is unlawful, it should preliminarily enjoin that provision and sever it from the remainder of the Current Rule.

"Whether an administrative agency's . . . regulation is severable . . . depends on the issuing agency's intent." *North Carolina v. FERC*, 730 F.2d 790, 795-96 (D.C. Cir. 1984). Here, the agency's intent is clear, because the Current Rule contains an express severability clause: "If any provision of this section is held to be invalid or unenforceable . . . the provision shall be severable from this section and shall not affect the remainder thereof." 29 C.F.R. § 2550.404a–1(f); *see also*

---

for breach of fiduciary duties under 29 U.S.C. § 1132(l), plus a series of escalating excise taxes under 26 U.S.C. § 4975 that apply until the prohibited transaction is reversed and corrected. As part of the correction process, any losses incurred by the plan as a result of the transaction are required to be reimbursed to the plan by the person responsible for the transaction, in this instance, the plan fiduciary. *See* 26 C.F.R. §§ 141.4975-13; 53.4941(e)-1(c) (providing guidance for corrections of prohibited transactions). A civil penalty under 29 U.S.C. § 1132(i) applies, in the event the excise taxes in 26 U.S.C. § 4975 do not apply to the plan.

[18] A common view is that the Prior Rule prohibits a plan from designating an ESG fund as a qualified default investment alternative ("QDIA"). The specific provision in the Prior Rule bars a fund from serving as a QDIA if it "promotes, seeks, or supports one or more non-pecuniary goals." 85 Fed. Reg. at 72,884. Another interpretation of the Prior Rule is that, while it clearly bars an ESG fund from serving as a QDIA if it purports to pursue a collateral purpose, it would permit an ESG fund to serve as a QDIA investment option if it does not espouse any collateral purpose and satisfies a risk-return analysis. If so, the Prior Rule would have a similar practical impact to the Current Rule. Regardless of whether this interpretation of the Prior Rule is warranted, it was reasonable for the Department to clarify in the Current Rule that only ESG funds that fail the risk-return analysis are barred from serving as QDIAs (or being offered under the plan at all).

*Biden v. Missouri*, 142 S. Ct. 647, 652 n.* (2022) (observing that the presence of "an express severability provision" alleviated any lingering concerns about the rule's legality). The Department has thus expressed its "intent that any legal infirmity found with part of the final rule should not affect any other part of the rule." 87 Fed. Reg. at 73,852. Accordingly, even if the tiebreaker provision were deemed invalid, it would not provide a basis to preliminarily enjoin any other portion of the rule.

## CONCLUSION

The Current Rule's provisions relating to the consideration of ESG factors, including the tiebreaker provision, do not mark a meaningful substantive departure from the Prior Rule, and are reasonable, lawful, and fully consistent with ERISA's structure.  Accordingly, Plaintiffs' request for relief should be denied.

Respectfully submitted,

*/s/ Andrew Soukup*
Andrew Soukup (E.D. Wis. No. 6297674)
Robert A. Long, Jr.*
Richard C. Shea*
Thomas Brugato*
Jason M. Levy*
Jack Lund*
Emily A. Vernon*
Adam Spiegel*
COVINGTON & BURLING LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
Tel: (202) 662-6000
Fax: (202) 662-6302
asoukup@cov.com
rlong@cov.com
rshea@cov.com
tbrugato@cov.com
jmlevy@cov.com
jlund@cov.com
evernon@cov.com
aspiegel@cov.com

*Members of the D.C. Bar, not admitted
in the Eastern District of Wisconsin*

*Counsel for J. Mark Iwry*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 5, 2023, I caused the foregoing document to be filed with the Clerk of the Court of the United States District Court for the Eastern District of Wisconsin using the Court's CM/ECF system.


*/s/ Andrew Soukup*
Andrew Soukup