IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

RICHARD BRAUN, et al.,

    Plaintiffs,

v.                                                    Case No. 23-cv-234

JULIE SU, in her official
capacity as Acting Secretary of Labor[1],

    Defendant.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

The purpose of ERISA is to protect retirement accounts and encourage saving. This is why Congress provides special tax incentives to both employees and employers to participate in 401(k) plans like those affected by the ESG Rule. 26 U.S.C. § 401 *et seq.*; *Foulkes v. Comm'r*, 638 F.2d 1105, 1106 and n.5–6 (7th Cir. 1981) (explaining these tax preferences). Congress made a policy choice to encourage retirement planning and savings and to protect those funds that are invested, full stop. *Boggs v. Boggs*, 520 U.S. 833, 852 (1997) ("Pension benefits support participants and beneficiaries in their retirement years, and ERISA's pension plan safeguards are designed to further this end."). These incentives are not provided to incentivize investment in a particular type of company, whether it's one that goes green to attract

---

[1] Plaintiffs have substituted the name of the Acting Secretary of Labor pursuant to Fed. R. Civ. P. 25(d)(1).

the political left, or one that advertises itself as having "good Christian values" to court the political right. ERISA is intended to be politically blind, focused "solely" on maximizing returns and defraying costs for participants. 29 U.S.C. § 1104(a). The ESG Rule undercuts these statutory purposes, as well as the statutory text, and a preliminary injunction enjoining its application is both appropriate and necessary.

I. **Plaintiffs have established a high likelihood of success on the merits.**

A. **The ESG Rule violates the text and purpose of ERISA .**

ERISA is in place to ensure that fiduciaries act for the exclusive benefit of retirement plan participants. There are two overarching principles that have always been true about ERISA and that the ESG Rule offends: 1) ERISA operates to protect participants and beneficiaries, not fiduciaries, *Boggs*, 520 U.S. at 845 ("The principal object of the statute is to protect plan participants and beneficiaries") (quoting citation omitted); and 2) "benefits" in the ERISA context "must be understood to refer to the sort of *financial* benefits (such as retirement income) that trustees who manage investments typically seek to secure for the trust's beneficiaries." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (citing 29 U.S.C. § 1104(a)(1)(A)(i), (ii)).

DOL and its supporting amicus posit that the ESG Rule does not do anything to change the status quo other than eliminate a perceived "chilling effect" on ESG investments, but this is incorrect. While the weight given to ESG factors under the Proposed Rule was far more obvious, going so far as to suggest that their consideration "may often be *required*" in prudent investment decisions, the inappropriate favoritism of ESG investments is still baked into the final ESG Rule. Under the Rule, ESG factors are simply decreed to be "risk and return factors" that

- 2 -

are appropriately part of the fiduciary's consideration. 87 Fed. Reg. 73822, 73885. There are several problematic issues with this approach that highlight why Plaintiffs are likely to succeed on the merits of their claims.

Fundamentally, defining ESG factors as "risk and return" factors alters prior standards of fiduciary duty by changing the nature of what fiduciaries are to consider without congressional authorization. For the last fifty years, the focus of a fiduciary's analysis has been maximizing return and minimizing cost, while keeping accounts diversified to minimize risk of loss. *Dudenhoeffer*, 573 U.S. at 415 (quoting 29 U.S.C. § 1104). DOL appears to argue that the ESG factors are simply being used as a tiebreaker, much as prior rules (including the 2020 Rule) did. The 2020 Rule did indeed permit ESG considerations to be used in a "tiebreaker" scenario. But the ESG Rule goes far beyond that; it touches every investment decision a fiduciary makes and suborns plan managers' use of ESG factors in *any* investment decision if, in the fiduciary's sole (and undocumented) discretion, they believe it to be prudent to do so.

The structure and text of the ESG Rule make this broader application plain. It provides generally that a "fiduciary's determination with respect to an investment or investment course of action" should be based on factors "relevant to a risk and return analysis," and then proceeds to state that "Risk and return factors may include the economic effects of climate change and other environmental, social, or governance factors on the particular investment or investment course of action." 29 C.F.R. § 2550.404a-1(b)(4); 87 Fed. Reg. 73885. This subsection is part of subsection (b), entitled "Investment prudence duties," which applies to *all* investment decisions, not

just tiebreakers. The tiebreaker scenario is discussed separately as an "investment loyalty duty" under subsection (c), where the ESG Rule provides that "collateral benefits" may be used as a tiebreaker if "a fiduciary prudently concludes that competing investments, or competing investment courses of action, equally serve the financial interests of the plan." 29 C.F.R. § 2550.404a-1(c)(2). *See NLRB v. SW General, Inc.*, 580 U.S. 288, 299–300 (2017) (statute relating to federal vacancies was to be applied more broadly than government argued because "Had Congress intended [the applicable subsection] to apply only" to limited scenarios, "it could easily have chosen clearer language" to accomplish that objective); *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 285 and n.7 (2011) (refusing to adopt narrow definition of "tax" advanced by state where the meaning would "nullify other subsections" of the statute); Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* § 28 at 184 (1st ed. 2012).

If indeed the ESG Rule were only pertinent to tiebreaker inquiries, the DOL might be able to effectively argue that, absent eliminating the disclosure requirement, the rule does not represent a major change. But if this were truly the case, there would be no need for the ESG Rule, and the ESG Rule presumably exists to accomplish *something*. And if it were truly the case that no underlying shift in policy has taken place, DOL could have simply focused on eliminating the disclosure requirement in the 2020 Rule to attain this objective—it need not have redefined ESG factors as "risk and return factors" and extolled their alleged virtues in a sixty-plus page federal regulation to reach that more limited result. Taking that step far

expands the ESG Rule's scope so that ESG factors can now be considered in *any* investment decision without limitation. No prior regulation gives such factors this primacy of place in a fiduciary's consideration.

DOL also argues that because the ESG Rule's text continues to quote the statute and forbids the subordination of returns to collateral objectives, that there is no cause for concern. But it is one thing to pay lip service to this concept and another to consider how the ESG Rule works in practice. Because the ESG Rule now defines ESG factors as "risk and return" factors, it affords them a priority status they have not previously occupied. While more subtle than the Proposed Rule's formulation, the choice to redefine ESG factors has the same practical impact because risk and return factors are what fiduciaries are to consider when making investment decisions. 87 Fed. Reg. 73885 at (b)(2)(i), (b)(4). If ESG factors are defined as risk and return factors, then they are to be considered. Notably, no other consideration besides ESG factors is specifically defined in the regulation as an "appropriate" "risk and return factor." *Id.*

Analogizing the ESG Rule to an example from Plaintiffs' opening brief (Dkt. 8:14), if the court interpreting the trust established to fund the beneficiary's education redefines "education" to include horse training and riding, the result is that the trustee is far more likely to raid the trust to buy the pony—even though the original intent of the trust (to fund the granddaughter's education) clearly does not contemplate this result. This outcome flies in the face of established trust law upon which ERISA is based, and it is generally error *not* to consider the underlying trust

- 5 -

law when evaluating an ERISA claim implicating a breach of fiduciary duty. In *Tibble v. Edison Int'l*, the Supreme Court unanimously held that the court of appeals erred when it summarily rejected an ERISA claim based on the statute of limitations "without considering the nature of the fiduciary duty" underlying the claim. 575 U.S. 523, 528 (2015). That duty, spelled out in Section 1104(a) of ERISA, is that the investment decisions made by fiduciaries be made "solely" for the "benefit" of the participants and beneficiaries—not the larger social objectives that ESG factors serve. Trustees are duty-bound to exercise their discretion only to serve the purposes of the trust, and ERISA "clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries" for the trust's purpose. *Central States, Se. & Sw. v. Central Areas Pension Fund v. Central Transport*, 472 U.S. 559, 571 (1985).

Congress did not authorize consideration of non-economic, politicized factors like "prioritize[ing] environmental justice" or creating "union jobs" when imposing fiduciary duties. 87 Fed. Reg. 73823. When an agency considers factors that Congress did not authorize it to consider, the underlying rule is arbitrary and capricious under the APA. *Boucher v. U.S. Dep't of Ag.*, 934 F.3d 530, 547 (7th Cir. 2019) (quoting citation omitted).

To the extent any of these factors have economic impacts that actually affect risk and return, fiduciaries are already duty-bound to consider them. *Tibble*, 575 U.S. at 529 (the "trustee has a continuing duty to monitor trust investments and remove imprudent ones" and the trustee "cannot assume that if investments are legal and

- 6 -

Case 2:23-cv-00234-PP   Filed 04/18/23   Page 6 of 14   Document 19

law when evaluating an ERISA claim implicating a breach of fiduciary duty. In *Tibble v. Edison Int'l*, the Supreme Court unanimously held that the court of appeals erred when it summarily rejected an ERISA claim based on the statute of limitations "without considering the nature of the fiduciary duty" underlying the claim. 575 U.S. 523, 528 (2015). That duty, spelled out in Section 1104(a) of ERISA, is that the investment decisions made by fiduciaries be made "solely" for the "benefit" of the participants and beneficiaries—not the larger social objectives that ESG factors serve. Trustees are duty-bound to exercise their discretion only to serve the purposes of the trust, and ERISA "clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries" for the trust's purpose. *Central States, Se. & Sw. v. Central Areas Pension Fund v. Central Transport*, 472 U.S. 559, 571 (1985).

Congress did not authorize consideration of non-economic, politicized factors like "prioritize[ing] environmental justice" or creating "union jobs" when imposing fiduciary duties. 87 Fed. Reg. 73823. When an agency considers factors that Congress did not authorize it to consider, the underlying rule is arbitrary and capricious under the APA. *Boucher v. U.S. Dep't of Ag.*, 934 F.3d 530, 547 (7th Cir. 2019) (quoting citation omitted).

To the extent any of these factors have economic impacts that actually affect risk and return, fiduciaries are already duty-bound to consider them. *Tibble*, 575 U.S. at 529 (the "trustee has a continuing duty to monitor trust investments and remove imprudent ones" and the trustee "cannot assume that if investments are legal and

proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely") (quoting A. Hess, G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 684 at 145–46 (3d ed. 2009)). In other words, if market developments, congressional action, or other factors make an investment with an ESG component more or less profitable, the fiduciary is already under a duty to monitor and consider that. The ESG Rule, by redefining the factors as relevant to risk and return, must do something more.

It is also no answer to argue that including the word "economic" as a modifier for ESG factors saves the rule. As noted in Plaintiffs' complaint and opening brief, one of the primary issues with injecting ESG's often-political considerations into the investment calculus is that investors, including fiduciaries, are unable to calculate the economic effects of an ESG policy. (Dkt. 1, ¶¶ 101–104.) It may be that mandating a minimum number of women or persons of color on a company's board of directors is a popular idea, but there is no dependable way to predict how the new policy will translate into dollars and cents. This is the very reason that the 2020 Rule and prior regulations only authorized the use of collateral interests when breaking ties. There is no established way to boil these factors down to the only number that matters: the balance in the participants' accounts. Simply redefining ESG policies as appropriate risk and return factors does not transmute them into economic considerations that fiduciaries can easily evaluate, hence why ESG funds typically cost more to administer. *See* Dkt. 1, ¶¶ 52-53, n.11–12 and sources cited therein; *Nohara v. Prevea Clinic Inc.*, -- F. Supp. 3d --, 2022 WL 3601567 at *5 (E.D. Wis. Aug. 23, 2022) ("ERISA

- 7 -

Case 2:23-cv-00234-PP   Filed 04/18/23   Page 7 of 14   Document 19

fiduciaries have a duty to evaluate costs and expenses when selecting investments as well as a continuing duty to monitor investments and remove imprudent ones") (citation omitted).

The ESG Rule's broad application becomes problematic when combined with the decision to eliminate any kind of disclosure under the rule. While DOL has concluded that the disclosure requirement provides no benefit to participants based on some of the public comments, 87 Fed. Reg. at 73840, the public comments of the rule's supporters on this issue alone are not enough to justify contravening one of the statute's primary purposes—providing information to participants about their retirement. 29 U.S.C. § 1001(a) ("that owing to the lack of employee information and adequate safeguards concerning [retirement plans'] operation . . . that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans"). More disclosure, and not less, has always been a part of a fiduciary's duties, even if disclosure related to ESG factors—itself a new phenomenon—has not long been mandated.

Furthermore, DOL cannot point to plan participants (those whom the law is intended to benefit) commenting about the effect of disclosures one way or the other, and there is a practical reason for that: President Biden suspended the 2020 Rule immediately upon taking office. 87 Fed. Reg. 73823 (enforcement of 2020 Rule suspended as of March 10, 2021). It is hardly fair to assert that participants will not benefit from disclosures or do not want them if the opportunity to receive them under the 2020 Rule was rescinded within just a few months.

Additionally, DOL argues that its determination is entitled to deference under *Chevron v. NRDC*, 467 U.S. 837 (1984), but that isn't the case either. DOL includes no analysis of step 1 of the *Chevron* inquiry (whether the statute is ambiguous) and simply declares that it is satisfied. Not so. Because the plain text of ERISA provides that the prudent investor rule is to be applied "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of "providing benefits to participants and their beneficiaries," 29 U.S.C. § 1104(a), and those benefits are to be "financial" in nature according to a unanimous Supreme Court, *Dudenhoeffer*, 573 U.S. at 421, deference on any further expansion is foreclosed. *Pereira v. Sessions*, 138 S.Ct. 2105, 2113 (2018) ("If the intent of Congress is clear, that is the end of the matter") (quoting *U.S.A. Inc. v. Nat. Resources Defense Council*, 467 U.S. 837, 842–43 (1984)).

But even if DOL were correct that the proper inquiry takes place at *Chevron* step 2, the government's argument falls short here as well because the agency's reading of the statute is not reasonable. As noted above, redefining the factors to be considered to include ESG influences as permissible considerations is contrary to the statute. It is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Utility Air Reg. Group v. EPA*, 573 U.S. 302, 328 (2014). DOL is not in a position to overrule either the plain text of ERISA enacted by Congress that the fiduciary "shall discharge his duties" "solely in the interest of participants and beneficiaries" and "for the exclusive purpose" of providing benefits to those groups. 29 U.S.C. § 1104(a)(1).

Redefining ESG factors that are not already material to prudent investment selection as "risk and return factors" contravenes these inflexible parameters set by Congress, and DOL is certainly not entitled to shroud its attempt to evade the constitutional separation of powers in a misfitting cloak of *Chevron* deference. DOL's interpretation is contrary to the statute and must be enjoined.

## II. Plaintiffs have established irreparable harm, and their request for a preliminary injunction was not unreasonably delayed.

Plaintiffs' harms are not speculative. While DOL is correct that *individual* investment determinations will ultimately be made by plan fiduciaries and not the government, the ESG Rule gives cover to investment decisions based on factors previously only considered in the event of a pecuniary "tie." As noted in detail above, the more expansive ESG Rule permits fiduciaries to consider ESG factors.

That Plaintiffs point to the effect that this rule will universally have on all 401(k) accounts does not make their interest speculative or not redressable, nor does the fact that not every fiduciary may ultimately rely on ESG factors when making every investment selection. The irreparable harm comes from DOL's decision to alter the very concept of fiduciary duty to permit consideration of collateral political considerations never contemplated or authorized by Congress by disguising them as "risk and return factors." The combination of allowing fiduciaries to use ESG factors—which are by their nature not easily economically quantifiable—and lifting any requirement that fiduciaries show their work when doing so causes irreparable harm to Plaintiffs both because they can lose money, and because they are unable to hold fiduciaries to account when the basis for their decisions is not disclosed. (Dkt.

8:15.) The ESG Rule, in short, subverts the concept of fiduciary duty by placing the interest of fiduciaries above those they have heretofore been duty-bound to serve. By facilitating this harm and opening the door to the consideration of factors outside of those authorized by Congress without even informing participants via disclosure that these considerations are being made, DOL causes this redressable but otherwise irreparable harm, even though the government is not making the individual investment determinations itself. DOL's argument to the contrary is tantamount to arguing that a bank employee who tips off a group of robbers and provides access to the bank's vault bears no responsibility for a resulting theft because he or she did not physically carry away the money.

Additionally, DOL asserts that Plaintiffs unreasonably delayed in seeking a preliminary injunction, but the cases DOL cites do not support that outcome here. The *Michigan* case DOL quotes does not deal at all with a delayed request; the quoted passage simply discusses the interplay between two preliminary injunction factors without any assertion or discussion of delay. Dkt. 15:21. The remaining cases either deal with lengthy delays that bear no resemblance to this case, *see Preston v. Bd. of Trustees*, 120 F. Supp. 3d 801, 805 (N.D. Ill. 2015) (seventeen months), or come from district courts from other circuits that do not control. *See* Dkt. 15:21. Notably, the Seventh Circuit's consideration of delay in the preliminary injunction context centers on whether the opposing party is lulled into a false sense of security by the delay. In *Ty, Inc. v. Jones Group, Inc.*, Ty sought a preliminary injunction over two years after sending a competitor a cease and desist letter demanding that they stop infringing

its intellectual property. 237 F.3d 891, 895 (7th Cir. 2001), On appeal from a grant of the preliminary injunction, the court observed that "[w]hether the defendant has been 'lulled into a false sense of security or had acted in reliance on the plaintiff's delay' influences" whether delay is acceptable or not. *Id.* at 903. Given the response to the release of the rule, which included bipartisan congressional action condemning the rule[2] and a lawsuit filed by approximately half of the states' attorneys general and several other private parties[3] in addition to Plaintiffs' suit, DOL can hardly assert that the rule was secure from challenge.

Additionally, DOL's reference to the date of the release of the Proposed Rule in October of 2021, apparently meant to make the delay seem unreasonable, is irrelevant. The Proposed Rule and its associated commentary was only about 50% of the length of the final ESG Rule, with the latter running over 65 three-column pages in the Federal Register. *Cf.* 86 Fed. Reg. 57272 (Oct. 14, 2021) *with* 87 Fed. Reg. 73822. The ESG Rule differed from the Proposed Rule in a number of respects, including most significantly the core language related to the treatment of ESG factors by plan fiduciaries. Suing to enjoin a proposed rule would have been futile, as such proposed regulations are not ripe for judicial review. *Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003) (citations omitted) (only final agency actions judicially reviewable). Under the circumstances,

---

[2] H.J. Res. 30 (118th Congress, 2023).

[3] *State of Utah v. Su*, 23-cv-16 (N.D. Tex. 2023) (filed January 26, 2023).

- 12 -

filing suit less than a month after the ESG Rule went into effect does not constitute unreasonable delay.

## III. Plaintiffs' proposed scope of relief is appropriate.

Finally, this Court should not artificially limit the scope of Plaintiffs' requested injunctive relief for two reasons, one legal and one practical. First, because the problem underlying the ESG Rule stems from its attempt to redefine collateral considerations as economic ones, the rule cannot be severed or limited in any logical way without this Court completely rewriting it, thereby requiring its invalidation *in toto*. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986) ("although this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of . . . judicially rewriting it") (quoting citations omitted). Second, limiting the scope of the injunction to the two Plaintiffs makes no practical sense both because *any* participant in a defined contribution 401(k) plan suffers the same harm (a point the DOL does not appear to dispute), and because investment decisions by plan fiduciaries are made on a far larger scale. Plan fiduciaries do not act as individual financial advisors, and it would be impractical (and not practically administrable) to simply not apply the rule to the two Plaintiffs while applying it to everyone else either in their respective employer's plans or nationwide.

- 13 -

Case 2:23-cv-00234-PP    Filed 04/18/23    Page 13 of 14    Document 19

## CONCLUSION

For the foregoing reasons and those set forth in the Plaintiffs' opening brief, this Court should immediately enter a preliminary injunction halting the use of the ESG Rule.

Dated this 18th day of April, 2023.

>WISCONSIN INSTITUTE FOR
>LAW & LIBERTY, INC.
>
>s/ *Katherine D. Spitz*
>
>Richard M. Esenberg (WI Bar No. 1005622)
>Katherine D. Spitz (WI Bar No. 1066375)
>Lucas T. Vebber (WI Bar No. 1067543)
>Daniel P. Lennington (WI Bar No. 1088694)
>330 East Kilbourn Avenue, Suite 725
>Milwaukee, WI 53202
>Telephone: (414) 727-9455
>Facsimile: (414) 727-6385
>Rick@will-law.org
>Kate@will-law.org
>Lucas@will-law.org
>Dan@will-law.og
>
>*Attorneys for Plaintiffs*